## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, Naples, FL 34110 | ) ) ) | Case No. _____ |
| Plaintiff, | ) | CLASS ACTION |
| v. | ) ) | JURY TRIAL DEMANDED |
| | ) | |

PAUL PARSHALL, Individually and On
Behalf of All Others Similarly Situated,
Naples, FL 34110
                    Plaintiff,

    v.

CHARTER FINANCIAL CORPORATION
1233 O.G. Skinner Drive
West Point, GA 31833

ROBERT L. JOHNSON
1233 O.G. Skinner Drive
West Point, GA 31833

DAVID ZIMRY CAUBLE III
1233 O.G. Skinner Drive
West Point, GA 31833

JANE W. DARDEN
1233 O.G. Skinner Drive
West Point, GA 31833

EDWARD D. SMITH
1233 O.G. Skinner Drive
West Point, GA 31833

THOMAS M. LANE
1233 O.G. Skinner Drive
West Point, GA 31833

DAVID L. STROBEL
1233 O.G. Skinner Drive
West Point, GA 31833

CURTIS M. JOHNSON
1233 O.G. Skinner Drive
West Point, GA 31833

CENTERSTATE BANK CORPORATION
1101 First Street South
Winter Haven, FL 33880
                    Defendants.

Case No. _____

CLASS ACTION

JURY TRIAL DEMANDED

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on April 24, 2018 (the "Proposed Transaction"), pursuant to which Charter Financial Corporation ("Charter" or the "Company") will be acquired by CenterState Bank Corporation ("CenterState").

2.      On April 24, 2018, Charter's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with CenterState.  Pursuant to the terms of the Merger Agreement, stockholders of Charter will receive 0.738 shares of CenterState common stock and $2.30 in cash for each share of Charter they own.

3.      On July 18, 2018, defendants filed a proxy statement/prospectus (the "Prospectus") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Prospectus, which scheduled a special meeting of stockholders for August 21, 2018, omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Prospectus.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the

1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Charter common stock.

9.      Defendant Charter is a Maryland corporation and maintains its principal executive offices at 1233 O.G. Skinner Drive, West Point, Georgia 31833.  Charter's common stock is traded on the Nasdaq market under the ticker symbol "CHFN."

10.     Defendant Robert L. Johnson ("Johnson") is Chairman of the Board and Chief Executive Officer ("CEO") of Charter.

11.     Defendant David Zimry Cauble III ("Cauble") is a director Charter.

12.     Defendant Jane W. Darden ("Darden") is a director of Charter.

13.     Defendant Edward D. Smith ("Smith") is a director of Charter.

14.     Defendant Thomas M. Lane ("Lane") is a director of Charter.

15.     Defendant David L. Strobel ("Strobel") is a director of Charter.

16.     Defendant Curti M. Johnson ("Johnson") is a director of Charter.

17.     The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18.     Defendant CenterState is a Florida corporation and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Charter (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20.     This action is properly maintainable as a class action.

21.     The Class is so numerous that joinder of all members is impracticable. As of April 24, 2018, there were approximately 15,137,631 shares of Charter common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be

dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

26.     Charter is a savings and loan holding company and the parent company of CharterBank, a full-service community bank and a federal savings institution.

27.     CharterBank is headquartered in West Point, Georgia, and operates branches in the Metro Atlanta, the I-85 corridor south to Auburn, Alabama, and the Florida Gulf Coast.

28.     On April 24, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with CenterState.

29.     Pursuant to the terms of the Merger Agreement, stockholders of Charter will receive 0.738 shares of CenterState common stock and $2.30 in cash for each share of Charter they own.

30.     According to the press release announcing the Proposed Transaction:

CenterState Bank Corporation (Nasdaq-GS: CSFL) ("CenterState" or the "Company"), the parent company of CenterState Bank, N.A.,  and Charter Financial Corporation (Nasdaq: CHFN) ("Charter"), the parent company of CharterBank, a federally-chartered savings bank headquartered in West Point, Georgia, announced today the signing of a definitive agreement and plan of merger pursuant to which Charter will merge with and into CenterState. Immediately upon completion of the merger, CharterBank will merge with and into CenterState Bank, N.A. As of March 31, 2018 and excluding purchase accounting, the combined company has pro forma total assets of $12.0 billion, gross loans of $8.0 billion, deposits of $9.5 billion and a market capitalization of

approximately $2.5 billion.

The acquisition of Charter represents CenterState's first entry into Georgia and Alabama for commercial banking.  CenterState already has a significant presence in both Alabama and Georgia through various business lines.  The Company's correspondent banking unit, headquartered in Atlanta, manages business relationships with approximately two-thirds of the community banks in Alabama and Georgia.  Combined with the mortgage and SBA units, CenterState currently has approximately 100 Atlanta-based employees.   Upon completion of the merger, Lee Washam, President of CharterBank, will join CenterState as Regional President for Georgia. . . .

Subject to the terms of the merger agreement, Charter stockholders will receive 0.738 of a share of CSFL common stock and $2.30 in cash consideration for each outstanding share of Charter common stock.  Based on CSFL's stock price of $27.72 as of April 24, 2018, this equates to a per share value of $22.76 and an aggregate deal value of $360.1 million.

The merger agreement has been unanimously approved by each of the board of directors of Charter and CenterState.   Completion of the merger is subject to customary closing conditions, including receipt of required regulatory approvals and the approval by the stockholders of Charter.  The transaction is expected to close in the fourth quarter of 2018.

***The Prospectus Omits Material Information, Rendering It False and Misleading***

31.     Defendants filed the Prospectus with the SEC in connection with the Proposed Transaction.

32.     As set forth below, the Prospectus omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.

33.     The Prospectus omits material information regarding the Company's and CenterState's financial projections as well as the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Sandler O'Neill + Partners, L.P. ("Sandler O'Neill").

34.     With respect to Sandler O'Neill's Comparable Company Analyses, the Prospectus fails to disclose the individual multiples and financial metrics for the companies observed by

Sandler O'Neill in its analyses.

35.    With respect to Sandler O'Neill's Analysis of Selected Merger Transactions, the Prospectus fails to disclose the individual multiples and financial metrics for the transactions observed by Sandler O'Neill in its analysis.

36.    With respect to Sandler O'Neill's Net Present Value Analyses, the Prospectus fails to disclose: (i) the "consensus mean analyst earnings per share and dividends per share estimates for CenterState for the years ending December 31, 2018 through December 31, 2019, as well as [the] estimated long-term annual earnings per share growth rate and dividend rate for the years thereafter, as provided by the senior management of CenterState"; (ii) all inputs and assumptions used to calculate the terminal values for Charter and CenterState; (iii) Sandler O'Neill's specific basis for its selections of price to earnings and tangible book value multiples; and (iv) the perpetuity growth rates implied by Sandler O'Neill's analyses.

37.    With respect to Sandler O'Neill's Pro Forma Merger Analysis, the Prospectus fails to disclose: (i) all of the "Pro Forma Assumptions"; (ii) CenterState's estimated earnings per share and tangible book value per share; and (iii) the nature of Sandler O'Neill's discussion with the Charter Board regarding "the actual results achieved by the combined company."

38.    The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39.     The Prospectus also fails to disclose whether the Company executed any confidentiality agreements that contained "don't ask, don't waive" provisions that prevented the counterparties from requesting waivers of standstill provisions to submit superior offers to acquire the Company, as well as whether any parties that executed confidentiality agreements are currently subject to standstill provisions.

40.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

41.     The omission of the above-referenced material information renders the Prospectus false and misleading, including, *inter alia*, the following sections of the Prospectus: (i) Background of the Merger; and (ii) Opinion of Financial Advisor of Charter.

42.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated
Thereunder Against the Individual Defendants and Charter**

43.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44.     The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Charter is liable as the issuer of these statements.

45.     The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were

aware of this information and their duty to disclose this information in the Prospectus.

46.     The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

47.     The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

48.     The Prospectus is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

49.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

50.     Because of the false and misleading statements in the Prospectus, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and CenterState**

51.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52.     The Individual Defendants and CenterState acted as controlling persons of Charter within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Charter and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the

various statements that plaintiff contends are false and misleading.

53.    Each of the Individual Defendants and CenterState was provided with or had unlimited access to copies of the Prospectus alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Prospectus.

55.    CenterState also had direct supervisory control over the composition of the Prospectus and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Prospectus.

56.    By virtue of the foregoing, the Individual Defendants and CenterState violated Section 20(a) of the 1934 Act.

57.    As set forth above, the Individual Defendants and CenterState had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Prospectus that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 31, 2018                      **GOLDMAN & MINTON, P.C.**

By:    /S/
Thomas J. Minton (Bar No. 03370)
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
(410) 783-7575
tminton@charmcitylegal.com

*Attorneys for Plaintiff*

11

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800